O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATASHA SHOCK,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. EDCV 16-1801-KES<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Natasha Shock ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

**I.**

**BACKGROUND**

Plaintiff applied for DIB and SSI on December 6, 2012, alleging disability commencing October 27, 2007. Administrative Record ("AR") 193-200. An ALJ conducted a hearing on January 27, 2015, at which Plaintiff, who was represented by an attorney, appeared and testified. AR 37-56. At the hearing, Plaintiff amended

her alleged disability onset date to December 6, 2012. AR 40.

On May 1, 2015, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 18-36. The ALJ found that Plaintiff had the following severe impairments: depression, anxiety, greater trochanteric bursitis of the hips, and an ankle sprain. AR 24. Notwithstanding her impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following additional limitations: she can lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; she can sit, stand, and/or walk for six hours in an eight-hour workday; she can frequently crouch and crawl, and she can perform unskilled work with frequent coworker and public contact. AR 26. Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not return to her past relevant work as a key holder, retail sales clerk, or check cashier, but that she could find work as a routing clerk, bagger, or sewing machine operator. AR 30-32. Therefore, the ALJ concluded that Plaintiff is not disabled. AR 32.

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a

whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

In determining a claimant's RFC, the ALJ should consider those limitations for which there is support in the record, but the ALJ need not consider properly rejected evidence of subjective complaints. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); Batson v. Comm'r of SSA, 359 F.3d 1190, 1197 (9th Cir. 2004) ("The ALJ was not required to incorporate evidence from the opinions of Batson's treating physicians, which were permissibly discounted.").

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate non-disability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

## III.
## ISSUES PRESENTED

Plaintiff raises one claim of error: that the ALJ did not properly consider Plaintiff's testimony. Joint Stipulation ("JS") at 3.

## IV.
## DISCUSSION

### A. The ALJ properly discounted Plaintiff's subjective pain testimony.
#### 1. Applicable Law.

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir.

1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingerfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements

or between his statements and his conduct. Smolen, 80 F.3d at 1284; Thomas, 278 F.3d at 958-59.[1]

### 2. Plaintiff's Testimony.

Plaintiff testified that she lives in a home with two roommates and her three young children, ages six, nine, and twelve. AR 42.

Plaintiff testified that she suffers from depression, anxiety, and post-traumatic stress disorder ("PTSD"). AR 43, 45. Her PTSD affects her ability to be around people. AR 45. She has problems "dealing with others." AR 51. Plaintiff testified that she experiences manic depression approximately once a week, and during those episodes she "can barely leave the bed." AR 52. Plaintiff has never gotten a driver's license because she has "never been really secure with driving" due to anxiety. AR 43. She took public transportation to the hearing, and she testified that to use public transportation, she needed to "put her headphones on and tune out the outside world." AR 43. Plaintiff experiences occasional numbness in her upper extremities which she attributes to her depression. AR 46. She testified that she just received permission to obtain outside therapy because the Loma Linda Veterans Affairs Medical Center ("VA"), where she normally receives treatment, cannot provide sufficient availability. AR 48.

Plaintiff further testified that she experiences disabling ankle and lower back pain. Plaintiff testified that her ankles gives out at random and causes her to fall

---

[1] The Social Security Administration ("SSA") recently published SSR 16-3p, 2016 SSR LEXIS 4, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims. SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. Murphy v. Comm'r of SSA, 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D. Tenn. May 18, 2016). SSR 16-3p took effect on March 16, 2016, approximately a year after the ALJ issued his decision on May 1, 2015, and therefore is not applicable to the ALJ's decision in this case. Id.

four to five times a week. AR 45, 51. She wears custom braces for her ankles and uses a cane at home. AR 51. To alleviate the pain in her ankles and back, she spends most of the day laying down with her legs up and a heating pad on her lower back. AR 51. She testified that her doctors are doing "tests" on her back and ankles and are waiting to see if her custom-fitted ankle braces are helping before "figur[ing] out the next step." AR 46. She also testified that she has occasional hip pain due to favoring one side of her body because of her ankle instability. AR 45.

On a typical day, Plaintiff wakes up her children and helps them get ready for school. Her roommates walk the children to school because she "can't do the walking." AR 46. She can do the dishes, but it takes a long time because she cannot stand for very long. AR 47. Her roommates do most of the other chores. Id. She makes TV dinners and "easy bake meals" and can attend to her own personal care. Id. She occasionally goes grocery shopping but she has to be accompanied by "a person that [she] trust[s] a lot," and she usually only goes in the middle of the night when the stores are not crowded. Id. She never travels to see friends and family and does not attend church or engage in other social activities. AR 47-48.

Plaintiff testified that she can sit no longer than ten minutes at a time without experiencing excessive pain in her lower back and legs. AR 49. She believes she could only sit for an hour total in an eight-hour workday. AR 50. She also cannot stand or walk for more than ten minutes at a time without experiencing pain and instability. AR 50-51. Plaintiff believes that she could stand no more than 40 minutes total in an eight-hour workday. AR 51.

Plaintiff testified that she takes medications for anxiety, depression, and difficulty sleeping. AR 48. She also takes meloxicam[2] to reduce inflammation "and a little bit of the pain." Id. She testified that she believes her medications are not

---

[2] Meloxicam is a nonsteroidal anti-inflammatory drug. See https://en.wikipediaorg/wiki/Meloxicam.

helping, but that the VA keeps canceling her appointments. She indicated the desire to begin seeing an outside doctor. AR 49.

Plaintiff from graduated high school and attended one year of college to earn a corrections technician certificate in 2012 (just prior to her alleged onset date of December 6, 2012). AR 43, 49. Between 2006 and 2012 Plaintiff did not work due to the effects of PTSD and an abusive marriage. AR 45. Plaintiff testified that she was self-employed in 2012 and 2013 setting up the website for a company with her boyfriend.[3] AR 44. She discontinued that employment when she and her boyfriend "parted ways" and because of her "depression level." Id. At that time she began experiencing manic episodes. Id.

### 3. The ALJ's Treatment of Plaintiff's Testimony.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible …." AR 17. The ALJ gave three reasons for discounting Plaintiff's credibility: (1) lack of objective evidence to support Plaintiff's allegations; (2) treatment inconsistent with Plaintiff's allegations of disabling pain; and (3) reported daily activities inconsistent with Plaintiff's allegations. AR 27-28.

### 4. Analysis.

Plaintiff contends that the ALJ failed to articulate any clear and convincing reasons for finding Plaintiff not credible. JS at 6. The Court disagrees.

    a. Plaintiff's daily activities were inconsistent with her claims of disabling impairments.

---

[3] In her "Request to Proceed In Forma Pauperis" in this action, Plaintiff verified that she "last worked in 2013" and was "paid commission" of $12,173.00. Dkt. 5; see also AR 23.

7

In discounting Plaintiff's testimony, the ALJ noted that Plaintiff "is taking online classes and doing well in school" and "is still able to perform activities of daily living and take care of her three young children." AR 27.

The ALJ's conclusion is a clear and convincing reason to discount Plaintiff's credibility. Plaintiff testified that she attends to her personal needs, prepares easy meals, does light housework, occasionally shops for groceries, takes online courses, and cares for her three children. AR 25, 47.

In a February 2013 Function Report, Plaintiff stated that, on a typical day, she work up in the morning, got her kids dresses and fed them. She also cleaned their clothes and made sure they had bathed. AR 25, 253. She reported that she was able to prepare "fast meals" in the oven and make sandwiches, hot dogs, and pancakes. AR 25, 253. She also reported that she did laundry and cleaned the living room and her children's room. Id.

The ALJ also noted that Plaintiff was taking online classes and doing well in school. AR 27. In 2011, Plaintiff enrolled in an online Associate's Degree program. AR 352, 357, 362. In July 2011, she reported that she was doing well in school, maintained a GPA of 3.6, and had made the Dean's list. AR 352. In August 2014, she reported that her continuing online studies entailed "a lot of computer work." AR 650, 667.

Plaintiff's reported daily activities indicate functioning inconsistent with her extreme allegations of disabling impairments (e.g., that she must spend all but approximately two hours per day lying down). AR 47. See, e.g., Burch, 400 F.3d at 680 (upholding adverse credibility determination based on claimant's ability to care for personal needs, cook, clean, shop, manage finances, and interact with boyfriend); Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work); Rollins v. Massanari, 261 F.3d 853 (9th Cir. 2001) (upholding ALJ's finding that the claimant's allegations of

disabling symptoms were undermined, in part, "by her own testimony about her daily activities, such as attending to the needs of her two young children"); Denham v. Astrue, 494 F. App'x 813, 815 (9th Cir. 2012) (unpublished) (ALJ reasonably found claimant's statements as to the nature and severity of her limitations inconsistent with "her daily activities, which included performing various chores and caring for two young children").

Plaintiff contends that her daily activities do not "constitute activity consistent with full time employment" and that therefore the ALJ improperly considered them. JS at 6. A plaintiff's daily activities, however, need not rise to the level of full-time employment to detract from the credibility of his or her subjective symptom testimony. Rather, an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." Molina, 674 F.3d at 1104. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. at 1113. As discussed above, the ALJ properly determined that Plaintiff's daily activities were inconsistent with her testimony regarding the disabling effects of her pain and mental impairments.

          a.      Objective medical evidence and treatment inconsistent with Plaintiff's alleged severity of mental impairments.

Plaintiff alleged that she had quite significant mental symptoms, including PTSD, anxiety, and depression that affects her ability to interact with people. AR 45, 51. The ALJ noted that that the record contains no evidence of "consistent psychotherapy or treatment … for mental health issues." AR 27. The ALJ also determined that those allegations were not supported by objective medical evidence. Id.

The ALJ's conclusions are supported by substantial evidence. Throughout 2011, mental status evaluations by Plaintiff's treating psychiatrist, Anthony Shin, M.D., indicated that Plaintiff had flat affect, but was alert and

oriented, with stable mood, coherent speech, logical train of thought, and intact memory and judgment. AR 352, 357, 362. She also denied having any hallucinations or suicidal ideations. Id. In October 2012, Plaintiff's therapist noted that Plaintiff was being treated for depression, but that she did not meet the criteria for major depressive disorder. AR 331. She did, however, screen positive for symptoms of PTSD. AR 335-36. In December 2012, Plaintiff reported that she was not currently taking any medications for her mental health symptoms, and denied having any trouble with sleep, appetite, or energy. AR 326. In 2013, she took antidepressant medication through an eight-month clinical trial, which she reported had been effective. AR 696-98.

In February 2014, Plaintiff sought to resume taking antidepressant medications. AR 692. Plaintiff's doctor noted that Plaintiff's last psychiatric appointment had been 15 months prior, in December 2012. AR 690, 698. In August 2014, Plaintiff told her doctor that her depression was better with "no lows," and she was coping with stress. AR 676. She noted "social anxiety," but she successfully managed it by listening to music on her phone and was able to ride public buses. AR 682. In August 2014, Plaintiff complained of trouble sleeping, but denied stress and reported that her depression was under control. AR 670. In October 2014, Plaintiff was neurologically intact, with normal affect and judgement. AR 656. At times, she has restricted affect and "fair" mood, but her concentration, memory, insight and judgment remained intact. AR 687.

That Plaintiff sought inconsistent treatment was a clear and convincing reason to discount her allegations of disabling mental impairment. See Burch, 400 F.3d at 681 (ALJ properly considered lack of treatment in discounting plaintiff's testimony regarding depression and fatigue); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (in assessing credibility, ALJ may consider unexplained or inadequately explained failure to seek treatment); Smolen, 80

F.3d at 1284 (same).

Further, Plaintiff's record demonstrates some depression and anxiety issues, but does not support the severity she alleges. There is no support in the record for Plaintiff's claims that she suffers from depression so severe that once a week she cannot get out of bed, or that her anxiety prevents her from interacting with people.

    b.  Inconsistency with the objective medical evidence of Plaintiff's ankle pain.

The ALJ found that the medical evidence demonstrated ankle impairments less severe than Plaintiff alleged. AR 27. This conclusion is supported by substantial evidence.

Plaintiff twisted her left ankle in 1998 during basic training.[4] AR 363. In January 2011, Plaintiff went to the VA complaining of bilateral ankle pain, left worse than right. She reported that her ankle rolled in at least three times a week and became swollen with activity. Id. The examiner noted some decreased joint degrees of freedom, actively and passively, and Plaintiff reported pain on palpation in two of her lower leg ligaments, and mild pain with range of motion. AR 364.

By May 2013, an examination of her ankle revealed normal contour and alignment. AR 484. There was no tenderness, and range of motion was full and painless. Id. Three x-rays of Plaintiff's ankle joints were "unremarkable." AR 28, 704. They revealed no evidence of fracture, dislocation, or bone destruction. Id. Plaintiff was referred to physical therapy to strengthen her ankle, but treatment was discontinued "due to multiple missed treatment appointments." AR 700.

Plaintiff sought treatment in August 2013 for ankle pain and instability. Her

---

[4] Plaintiff served one year of non-combat service from 1998-99. AR 366. However, she appears to have been discharged after her ankle injury, and receives a 10% veteran compensation for her service connected disability of "limited ankle motion." AR 45, 377.

ankle exhibited limited range of motion in dorsiflexion, but sensation was normal. AR 503-04. There was some tenderness to palpation over the two lower leg ligaments and Plaintiff reported pain when inverting her ankles. Id. However, she was able to do five calf raises, with only some discomfort in her lateral left foot. Id. In September 2013, Plaintiff was fitted with custom braces and orthotic shoes. AR 503, 509. By November 2013, she reported some continued ankle weakness and that her ankles still occasionally rolled inward, but she felt that the braces were helping. AR 703. The ALJ was reasonable in determining that the objective evidence did not support her allegations of extreme weakness and pain.[5]

Ultimately, the ALJ did not rely solely on the lack of supporting medical evidence to discount Plaintiff's credibility. As discussed above, the ALJ gave two other clear and convincing reasons to discount Plaintiff's credibility concerning the severity and limiting effects of his pain. The ALJ was permitted to consider the lack of supporting medical evidence as a factor confirming his other reasons. See Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted); Social Security Ruling 96-7p (same).

//
//
//

---

[5] The ALJ also found that Plaintiff's allegations of severe hip pain were not supported by the medical record. AR 28. Plaintiff does not appear to contest that finding. See JS at 19.

## IV.
## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: April 10, 2017

_____
KAREN E. SCOTT
United States Magistrate Judge